**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION AT LAFAYETTE**

ANDREW O'SHEA, individually and )
on behalf of all those similarly situated, )
        Plaintiff, )
                    )      CAUSE NO. 4:16-CV-15-JD-JEM
      v. )
                    )
JAMES HARDING, MARISOL )
MARTINEZ, and RUBEN HERNANDEZ, )
        Defendants, )

**FINDINGS, REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE PURSUANT TO**
**28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on Defendants' Motion to Dismiss First Amended Complaint [DE 24], filed by Defendants on June 14, 2016. On July 8, 2016, Plaintiff filed a response; on July 29, 2016, Defendants filed a reply; and on October 14, 2016, with leave of Court, Plaintiff filed a sur-reply.

On October 11, 2016, Judge Jon E. DeGuilio entered an Order referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant Motion pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).

For the following reasons, the Court recommends that the District Court **GRANT** Defendants' Motion to Dismiss First Amended Complaint [DE 24].

## I.     Procedural Background

Plaintiff filed his First Amended Complaint on May 16, 2016, alleging civil Racketeer Influenced and Corrupt Organizations Act ("RICO") claims against Defendants James Harding, Marisol Martinez, and Ruben Hernandez – employees of the Indiana Packers Corporation ("IPC"),

a meat processing plant in Delphi, Indiana. Plaintiff alleges that Defendants made false attestations and accepted falsified immigration documents in hiring employees who were unauthorized to work in the United States. Because so many unauthorized workers were hired at IPC, Plaintiff alleges that his wages were lower than they should have been.

Plaintiff asserts these claims "on behalf of himself . . . and all other persons legally authorized to be employed in the U.S., who have been employed at the [IPC Delphi Plant] as hourly production wage earners in the four years prior to the filing of this case . . . through trial." On June 14, 2016, Defendants filed their Motion to Dismiss, requesting that the Court dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## II.     Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on such a motion, the Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1082 (7th Cir. 2008).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint must first comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). Second, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570); *see also Tamayo*, 526 F.3d at 1082.

The Supreme Court explained that the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quotation marks and brackets omitted); *see also Iqbal*, 556 U.S. at 678-79; *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The Seventh Circuit Court of Appeals has explained that "[t]he complaint 'must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'" *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) (quoting *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Serv., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008)). In order "[t]o meet this plausibility standard, the complaint must supply enough fact to raise a reasonable expectation that discovery will reveal evidence supporting the plaintiff's allegations." *Indep. Trust Corp.*, 665 F.3d at 934-935 (quoting *Twombly*, 550 U.S. at 556) (quotation marks omitted).

### III. Facts

Plaintiff alleges that Martinez and Hernandez worked in IPC's human resources department and that Harding was their immediate supervisor. Amend. Compl. at ¶¶ 30-31. According to Plaintiff, from 2012 through the start of this case in 2016, Martinez and Hernandez hired hundreds or thousands of employees who were not authorized to work in the United States. Amend Compl. at ¶ 61. Plaintiff alleges that, in order to hire the unauthorized workers without issue, Martinez and Hernandez repeatedly lied on the workers' Employment Eligibility Verification forms ("I-9 forms"), which are used to ensure that U.S. companies hire only employees who are authorized to work in the

United States. Amend. Compl. at ¶¶ 43-51 Plaintiff alleges that Martinez and Hernandez knew the workers were not authorized to work in the United States and were using falsified paperwork. Amend. Compl. at ¶¶ 35-37. Harding, Plaintiff says, knew and approved of the scheme. Amend. Compl. at ¶ 40.

Because IPC hired so many unauthorized workers, Plaintiff alleges that he and the other members of the putative class received a lower wage than they would have if IPC hired only authorized workers. Amend. Compl. at ¶¶ 28-29. Plaintiff alleges that he and the members of his class were "tied" to their positions IPC and continued to work for substandard wages because of the cost of finding another job, the difficulty of finding appropriate jobs, and the low turnover rate within the relevant labor market. Amend. Compl. at ¶¶ 20-27.

Plaintiff also alleges that he and the other class members were tied to their jobs at IPC because of IPC's "market power" to influence wages in the relevant labor market. Amend. Compl. at ¶ 20. Geographically, Plaintiff limits this labor market to people who live within 50 miles of the Delphi IPC plant. Amend. Compl. at ¶ 9. Demographically, Plaintiff says the relevant labor market is limited to all high-school dropouts who also have an arrest record, a recent physical injury, or an unstable work history – in Plaintiff's words, "drop-out-plus-one" workers. Amend. Compl. at ¶ 16. Plaintiff alleges that IPC employed 29% of the people within these geographic and demographic limitations. Amend. Compl. at ¶ 17. This large market share, coupled with the difficulty Plaintiff and class members would have had in finding another suitable job, gave "IPC the ability to keep workers while paying them less than the value of what they produce for IPC." Amend. Compl. at ¶ 27.

## IV.    Analysis.

RICO makes it "unlawful for any person employed by or associated with any enterprise

engaged in, or the activities of which affect, interstate commerce to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). RICO also prohibits conspiring to violate RICO. 18 U.S.C. § 1962(d). Defendants argue that Plaintiff has failed to state a claim for relief and that this case should accordingly be dismissed. Defendants raise several arguments in support of their Motion, and the Court addresses each in turn.

A.   <u>RICO Standing</u>

Under RICO, only those who are "injured in his [or her] business or property by reason of a violation of section 1962" have standing sue under RICO's civil right of action provisions. 18 U.S.C. § 1964(c); *see also DeGuelle v. Camilli*, 664 F.3d 192, 198 (7th Cir. 2011) (quoting *RWB Servs., LLC v. Hartford Computer Grp., Inc.*, 539 F.3d 681, 685 (7th Cir. 2008)) ("[A]cause of action under § 1962(c) requires a plaintiff to plead '(1) an injury in its business or property (2) by reason of (3) the defendants' violation of section 1962.'"). Defendants argue that Plaintiff's alleged injury does not qualify as RICO "business or property" and that, even if it did, Plaintiff has failed to plead enough facts to demonstrate that the his injury was caused "by reason of" Defendants' alleged conduct.

1.   Business or property

Defendants assert that Plaintiff's alleged injury – the difference between his actual wage and what he would have been paid had Defendants not violated § 1546 – is an improper foundation for a civil RICO case. "[A] cause of action does not accrue under RICO until the amount of damages becomes clear and definite." *Evans v. City of Chi.*, 434 F.3d 916, 932 (7th Cir. 2006) (quoting *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003)), *overruled on other grounds by*

*Hill v. Tangherlini*, 724 F.3d 965, 938 (7th Cir. 2013).

In this case, Plaintiff alleges that Defendants' alleged conduct caused IPC to pay lower wages to Plaintiff and the other class member. Plaintiff alleges that he earned $10.50 to $10.85 an hour during his employment at IPC in 2013 and 2014. Amend. Compl. at ¶ 18. Plaintiff also alleges the following:

- "In the IPC labor market, the average wage of full-time workers with less than a high school education in 2013 was $14.05 – well above the wage of [Plaintiff] at IPC in 2013." Amend. Compl. at ¶ 18.

- "In Indiana . . . the average wage of full-time workers with less than a high school education in 2013 was $14.21, which is also well above the wage of [Plaintiff] in 2013." Amend. Compl. at ¶ 18.

- "Among full-time workers with less than a high school education who work in the same occupational group as IPC workers . . . in Indiana, the average full-time wage in 2013 was $15.42 for those of all ages and $15.14 for workers between the ages of 25 and 30, which is the age group of [Plaintiff]." Amend. Compl. at ¶ 18.

Plaintiff contends that the gap between his own wages and the average wages above – Plaintiff does not specify which average wage should be used in calculating his damages – was caused by Defendants' alleged § 1546 violations.

The threshold issue is whether the difference between Plaintiff's actual wages and the average market wage qualifies as Plaintiff's "business or property" under RICO's standing provision. *See* 18 U.S.C. § 1964(c). Defendants say that the allegedly lost wages were not Plaintiff's "business or property" under RICO's standing provision because Plaintiff never contracted to receive higher wages and was not otherwise entitled to them. Plaintiff argues that the alleged damages are compensable because they are sufficiently concrete.

In *Evans v. City of Chicago*, the Court of Appeals for the Seventh Circuit left open the possibility that Plaintiff's alleged damages could qualify as "business or property" under RICO. 434

F.3d at 928 ("Where an employee is able to establish that he has been unlawfully deprived of a property right in promised or contracted for wages, the courts have been amenable to classifying loss of those wages as injury to "business or property."). *Id.* at 928 (citing *Williams v. Mowhawk Indus.*, 465 F.3d 1252, 1260 (11th Cir. 2005)). While the Seventh Circuit did not explicitly hold that depressed wages constitute damage to "business or property" under RICO's standing provision, the court in *Evans* acknowledged the propriety of other circuits doing so. *See Evans*, 434 F.3d at 928. Accordingly, it seems likely that Plaintiff's alleged injury is compensable under RICO. *See also Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1168 n. 4 (9th Cir. 2002) (holding that depressed wages due to hiring of unauthorized workers are compensable under RICO because plaintiffs retained a "legal entitlement to business relations unhampered by schemes prohibited by the RICO predicate statutes.").

However, even assuming that Plaintiff's alleged damages are compensable under RICO, Plaintiff has failed to plead facts sufficient to support his damages claim. The narrowest category of workers Plaintiff references in his Complaint for wage comparison is "full-time workers with less than a high school education who work in the same occupational group as IPC workers" who are "between the ages of 25 and 30" and who also live in Indiana. Amend. Compl. at ¶ 18. Excluded from this benchmark group, though, is a key demographic characteristic: the "plus one" factor. Plaintiff's Amended Complaint alleges that he and many of the putative class members did not complete high school *and* that they had one of the following "plus one" characteristics: "an arrest record, a recent physical injury, and/or an unstable work history." Amend. Compl. at ¶ 16.

In contrast, Plaintiff's proposed benchmarks for determining his damages – the average wages of high school dropouts who may or may not have a "plus one" factor – is a fundamentally

inadequate measure of Plaintiff's damages. Plaintiff's own Complaint alleges that individuals with a "plus one factor" have more difficulty finding jobs in the relevant labor market. Amend. Compl. at ¶ 16, 18, 22, 25. Logically, these workers also accepted lower pay than workers without a "plus one" factor. *See* Amend. Compl. at ¶ 18 ("[Plaintiff] did not complete high school and has an arrest record. Having little choice, he accepted a job at IPC in 2013 for approximately $10.50/hour."). Plaintiff cannot allege his injury to "business or property" by comparing his wages to the wages of someone not similarly burdened by a "plus-one factor." The average wages of high-school dropouts are, according to Plaintiff's own Amended Complaint, higher than those of "drop-out-plus-one" workers.

Because Plaintiff has failed to allege an appropriate benchmark wage, Plaintiff has not clearly and definitely pleaded that he suffered injury to his business or property. *See Evans*, 434 F.3d at 932 ("[A] cause of action does not accrue under RICO until the amount of damages becomes clear and definite."). Accordingly, the Court recommends that Judge DeGuilio dismiss Plaintiff's RICO claims for lack of standing. *See* 18 U.S.C. § 1964(c).

2. Causation

Plaintiff also failed to adequately plead that Defendants' alleged RICO violations caused his harm. To have standing, RICO plaintiffs must allege that they were injured "by reason of" a defendant's RICO violations. 18 U.S.C. § 1964(c). This requirement has been interpreted to mean that a defendant's RICO violations must be both the "but for" and proximate cause of the plaintiff's injury. *Browning v. Flexsteel Indus.*, 955 F. Supp. 2d 900, 916 (N.D. Ind. 2013). To demonstrate proximate cause, a plaintiff must show "some direct relation between the injury asserted and the injurious conduct alleged. A link that is 'too remote,' 'purely contingent,' or 'indirect'

insufficient." *Id.* (quoting *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 2 (2010)).

In this case, Plaintiff alleges that Defendants' alleged RICO violations directly caused his injury. Plaintiff's theory is that Defendants' violations caused IPC to hire a significant number – 15 to 20% of its work force – of unauthorized workers. Amend. Compl. at ¶ 42. Hiring unauthorized workers who were willing to accept substandard wages, Plaintiff alleges, caused IPC to pay Plaintiff and class members less. Amend. Compl. at ¶ 28 [DE 19]. Plaintiff alleges this problem was compounded by the fact that he and others could not leave IPC to find other jobs in the area. Amend. Compl. at ¶ 20-27 [DE 19]. Plaintiff says that the costs and difficulty of finding another job, coupled with the low vacancy rate in the relevant labor market, effectively "tied" Plaintiff and class members to IPC. Amend. Compl. at ¶ 20 [DE 19]. Plaintiff alleges that IPC employed up to 41% of workers in the relevant labor pool, giving it the "market power to set wages of IPC workers." Amend. Compl. at ¶ 27.

In *Walters v. v. McMahen*, 684 F.3d 435 (4th Cir. 2005), the Court of Appeals for the Fourth Circuit considered a nearly identical proximate cause issue. There, the plaintiffs alleged that their employer, a poultry processing company, falsified I-9 forms in hiring workers who were not authorized to work in the United States. *Walters*, 684 F.3d at 437-38. The *Walters* court held that the plaintiffs' allegedly depressed wages were not proximately caused by the defendants' alleged conduct because the decreased wages were "not directly linked to any . . . false attestation" on the I-9 forms. *Id.* at 444.

In so holding, the *Walters* court described the reasoning behind the proximate cause requirement:

> The Supreme Court has identified three reasons supporting [the]

> requirement of a direct link between an alleged predicate act and a plaintiff's injury. These reasons are: (1) the factual difficulty of measuring indirect damages and distinguishing among distinct independent causal factors; (2) the complexity of apportioning damages among plaintiffs to remove the risk of multiple recoveries; and (3) the vindication of the law through compensation of directly-injured victims.

*Id.* at 444 (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 269-70 (1992)). Concerning the plaintiffs' allegedly depressed wages, the *Walters* court reasoned:

> The first rationale identified [by the Supreme Court in] supporting the requirement of proximate causation illustrates the central deficiency of the plaintiffs' claim. Here, the factual challenges involved in attempting to measure indirect damages and to distinguish among independent causal factors would be insurmountable.

*Id.* The *Walters* court also noted that the false I-9 attestations were "fundamentally crimes against the government of the United States, and such actions do not directly impact the plaintiffs' wage levels." *Id.* Due to the plaintiffs' failure to show that their damages were caused "by reason of" the defendants' false attestations, among other reasons, the *Walters* court affirmed the district court's dismissal of the plaintiffs' complaint for failure to state a RICO claim. *Id.*

The Fourth Circuit's reasoning in *Walters* is instructive in this case. The causal connection between Plaintiff's depressed wages and Defendants' alleged violations is simply too tenuous. Plaintiff is correct that the government's ability to penalize immigration fraud does not foreclose private rights of action – there can be more than one direct victim of RICO violations, *see Phoenix Bond & Indem. Co. v. Bridge*, 477 F.3d 928, 932 (7th Cir. 2007) – but Plaintiff still has not sufficiently pleaded that he and the members of his class were directly injured by Defendants' conduct. He has "not demonstrated that the false attestations themselves have had a direct negative impact on the plaintiff['s] wages, or on any other aspect of [his] compensation." *Walters*, 685 F.3d

at 435.

Although Plaintiff alleges that he and other class members would have been paid more absent Defendants' alleged RICO conduct, Plaintiff uses average wages of high school dropouts to make that argument. As discussed above, Plaintiff does not allege any information about the average wages of "drop-out-plus-one" workers – workers who did not complete high school and who also have an arrest record, a recent physical injury, or an unstable work history. The difference between Plaintiff's wage and the average wage of all high school dropouts might be caused solely by the effect of his "plus one" history. Indeed, many factors independent of Defendants' RICO violations likely contributed to Plaintiff's lower wages. *See Holmes*, 503 U.S. at 269 ("[T]he less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors."). While at this time the Court takes Plaintiff's allegations as true, *Tamayo*, 526 F.3d at 1082, Plaintiff has still failed to sufficiently plead that Defendants' alleged conduct proximately caused his injury. *Walters*, 684 F.3d at 437-38.

Plaintiff's citations to antitrust rule-of-reason cases does not change this proximate cause analysis. *See, e.g.*, *Toys "R" Us, Inc. v. FTC*, 221 F.3d 928 (7th Cir. 2000). Plaintiff's injury arguments rely on allegations that "IPC has market power over the subset of unskilled workers" it employs. Even assuming Plaintiff's description of IPC's market power is accurate, which the Court must do at this stage, *see Twombly*, 550 U.S. at 555-56, Plaintiff has, as discussed above, still failed to adequately allege a direct relationship between Defendants' RICO violations – falsifying and accepting improper immigration paperwork – and any effect on wages in the relevant market.

Because Plaintiff fails to show that he and the putative class members were injured "by reason of" Defendants' alleged RICO violations, he does not have standing to assert his RICO claims

as alleged. 18 U.S.C. § 1964(c). Accordingly, the Court recommends that Judge DeGuilio dismiss Plaintiff's claims for lack of RICO standing. *Id.*

B.    RICO "Conduct" and "Pattern" Requirements

Because Plaintiff's lack of standing is fatal to all his RICO claims, the Court need not address Defendants' other arguments. However, for the sake of clarity, the Court will briefly address Defendants' argument that Plaintiff has failed to state a direct RICO claim against Martinez and Hernandez under 18 U.S.C § 1962(c).[1] To allege a violation of § 1962(c), "a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Slaney v. Int'l Amateur Ath. Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)). Defendants argue that Plaintiff failed to allege facts to demonstrate both the "conduct" and "pattern" elements.

1.    Conduct

"According to the Supreme Court, in order to have conducted or participated in the enterprise's affairs under § 1962(c), the person charged must have had some part in directing those affairs." *Slaney v. Int'l Amateur Ath. Fed'n*, 244 F.3d 580, 598 (7th Cir. 2001) (citing *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)). The defendant "must have participated in the operation or the management of the enterprise itself, and she must have asserted some control over the enterprise." *Id.* (quoting *United States v. Swan*, 224 F.3d 632, 635 (7th Cir. 2000)). "Allegations that a defendant had a business relationship with the putative RICO enterprise or that a defendant performed services for that enterprise do not suffice." *Critchon v. Golden Rule Ins. Co.*, 576 F.3d 392, 399 (7th Cir.

_____

[1] Plaintiff concedes that the Amended Complaint pleads only conspiracy claims against Harding, not direct violations of § 1962(c). Pl. Resp. at 17 ("Harding is not alleged to have personally committed any predicate acts."). Accordingly, the Court discusses only Plaintiff's allegations that Martinez and Hernandez violated § 1962(c).

2009) (citing *Slaney*, 244 F.3d at 597).

In this case, Plaintiff alleges that Martinez and Hernandez worked in IPC's human resources department and, in the course of their duties, made false representations on I-9 forms and accepted fraudulent immigration documents. Defendants contend that these allegations do not suffice to show that they "conducted" or "participated in" IPC's activities within the meaning of the RICO statute. *See* 18 U.S.C. § 1962(c). Instead, Defendants argue, Plaintiff is required to show that Defendants did more, that the character of their participation in IPC's affairs rose to the level of "operation or management of IPC as a whole." Defs. Mot. at 18.

In considering the meaning of "conduct" and "participate" as used in § 1962(c), the Supreme Court has reasoned:

> In order to "participate, directly or indirectly, in the conduct of such enterprise's affairs," one must have some part in directing those affairs. Of course, the word "participate" makes clear that RICO liability is not limited to those with primary responsibility for the enterprises affairs, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required.

*Reves*, 507 U.S. at 179. To balance these concerns, the Supreme Court has held that § 1962(c)'s "conduct or participate" language means "to participate in the operation or management of the enterprise itself." *Id.* at 185. The Supreme Court has also explicitly noted that the "operation or management" test does not exclude from liability those employees who are not high-level managers:

> We agree that liability under § 1962(c) is not limited to upper management, but we disagree that the "operation or management" test is inconsistent with this proposition. An enterprise is "operated" not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management. An enterprise also might be "operated" or "managed" by others

"associated with" the enterprise who exert control over it as, for example, by bribery.

*Id.* at 184. The Supreme Court did not decide "how far § 1962(c) extends down the ladder of operation." *Id.* at 184 n. 9.

According to Plaintiff's Amended Complaint, Martinez and Hernandez were employees of IPC and used that position to hire unauthorized workers using falsified documents. In doing so, they sufficiently "participate[d] in the operation or management of" IPC itself. *Id.* at 185. None of the precedent Defendants cite requires Plaintiff to show that Martinez and Harding were higher up the corporate food chain. To the contrary, other courts have clearly held that low-level employees may satisfy RICO's conduct or participation test. *See, e.g.*, *United States v. Otero*, 37 F.3d 739, 751 (1st Cir. 1994) ("We think Congress intended to reach all who participate in the conduct of that enterprise, whether they are generals or foot soldiers."); *Gilo v. United States*, 969 F. Supp. 512, 514 n. 1 (N.D. Ill. 1997). Accordingly, Plaintiff has sufficiently pleaded that Martinez and Harding, as IPC employees, "had some part in directing [IPC's] affairs." *Slaney*, 244 F.3d at 598.

### 2. Pattern of racketeering activity

Defendants also argue that Plaintiff's Amended Complaint did not sufficiently describe a pattern of racketeering activity as is necessary to establish liability under § 1962(c). To demonstrate a "pattern" of racketeering activity, a RICO plaintiff must show a minimum of "two predicate acts of racketeering committed within a ten-year time period. The predicate acts are violations of a specified list of criminal laws." *Goren*, 156 F.3d at 728. Plaintiff's Amended Complaint alleges that Defendants violated 18 U.S.C. § 1546, which prohibits – among other things – using, accepting, and falsifying improper immigration documents. Violations of § 1546 are explicitly included in the

definition of RICO "racketeering activity." *See* 18 U.S.C. § 1961(1)(B). Because violations of § 1546 involve fraud, a plaintiff must typically plead the violations with sufficient particularity to satisfy the heightened pleading requirements of Rule 9(b). *See Goren*, 156 F.3d at 729.

To satisfy Rule 9(b)'s heightened pleading requirement, a RICO plaintiff must allege "the time, place, and content of an allegedly fraudulent communication." *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1050 (7th Cir. 1998). Plaintiff argues that Rule 9(b) should be relaxed in this case because he cannot yet discover more information about the alleged § 1546 violations. Without any way to discover additional details about Defendants' alleged conduct, Plaintiff says, he should not be required to allege more than the general details of Defendants' scheme already provided in the Amended Complaint. *See Corley*, 142 F.3d at 1051 ("[T]he particularity requirement of Rule 9(b) must be relaxed where the plaintiff lacks access to all the facts necessary to detail his claim, and that is most likely to be the case where . . . the plaintiff alleges a fraud against one or more third parties.")

Because IPC, who is not a defendant, maintains records of hiring paperwork, Defendants argue that they do not "exclusively possess" the information necessary for Plaintiff to learn the required details of his claims. *See Gavin v. AT&T Corp.*, 543 F. Supp. 2d 885, 897 (N.D. Ill. 2008). As a result, Defendants contend that Rule 9(b) need not be relaxed in this case. Furthermore, Defendants argue that Plaintiff's Amended Complaint alleges that the scheme was widely known among IPC employees, so Plaintiff could have uncovered the details he seeks through other IPC employees.

Despite Defendants' arguments, this case calls for relaxed application of Rule 9(b). Plaintiff "lacks access to all the facts necessary to detail his claim" and he alleges that Martinez and Hernandez made fraudulent I-9 form representations to "one or more third parties," namely the

15

federal government. *Corley*, 142 F.3d at 1051. That IPC maintains records of hiring paperwork does not mean that Plaintiff, who does not have access to those records, was able to discover specific details about those records to support his Amended Complaint. Neither does workplace gossip suffice as a method for uncovering detailed and reliable factual allegations. Defendants' proposed distinction between IPC and the individual defendants in this case is irrelevant for the purposes of determining the level of detail Plaintiff must include in his Amended Complaint; the fact remains that Plaintiff does not have access to the contents of the I-9 forms or other hiring documents. *See Corley*, 142 F.3d at 1051.

Plaintiff alleges that Defendants made false representations concerning immigration status and accepted fraudulent immigration paperwork hundreds or thousands of times. Amend. Compl. at ¶¶ 43-44 (alleging false statements on I-9 forms), ¶¶ 54-55 (alleging unlawful acceptance of fraudulent visas, permits, etc.). These two types of § 1546 violations are sufficiently distinct to qualify as separate predicate acts. *See Walters*, 684 F.3d at 440, 443 (4th Cir. 2012) (considering as distinct predicate acts the "knowing act of hiring multiple unauthorized aliens" and the "fraudulent use and false attestation of documents"). At this time, without access to more information, Plaintiff does not need to provide more detail of the "pattern" of racketeering activity. *See Corley*, 142 F.3d at 1051 (allowing a plaintiff to plead predicate acts "more generally" under a relaxed Rule 9(b) standard).

Accordingly, Plaintiff sufficiently alleged a pattern of racketeering activity. However, as discussed above, all Plaintiff's RICO claims must be dismissed for lack of standing.

C.      RICO Conspiracy

As discussed below, Plaintiff has also sufficiently alleged that Defendants violated § 1962(d),

which makes it "unlawful for any person to conspire to violate" § 1962(c), the section discussed above. 18 U.S.C. § 1962(d). Again, Plaintiff does not have standing to assert this claim, but the Court briefly address Defendants' arguments in the spirit of completeness. Defendants argue that Plaintiff pleaded facts insufficient to show that Defendants agreed to commit RICO violations and that, even if they did agree, Plaintiff's conspiracy claim is barred by the so-called "intracorporate conspiracy" doctrine.

1.      Agreement under § 1962(d)

To be liable for conspiring to violate RICO, "there must be proof that the individual, by his words or actions, objectively manifested an agreement to participate, directly or indirectly, in the affairs of an enterprise, through the commission of two or more predicate crimes." *United States v. Neapolitan*, 791 F.2d 489, 497 (7th Cir. 1986) (quotations and citations omitted); *see also DeGuelle v. Camilli*, 664 F.3d 192, 204 (7th Cir. 2011). "[T]he touchstone of liability under § 1962(d) is an agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute." *Goren v. New Vision Int'l*, 156 F.3d 721, 732 (7th Cir. 1998).

Defendants contend that beyond these basic allegations, Plaintiff must also allege the following "necessary details":

> (a) the specific parameters of the agreement; (b) what each Defendant's role in the "conspiracy" was; (c) when, where, and how the agreement was reached; (d) why the Defendants engaged in the conspiracy; (e) the particular predicate acts to be committed by each Defendant; and (f) how IPC's affairs would be conducted through these supposed racketeering activities.

Defs. Mot. at 11-12. Defendants argue that, under the heightened pleading standard of Federal Rule of Civil Procedure 9(b), Plaintiff is required to plead his claims with this level of specificity.

However, Rule 9(b) does not apply to conspiracy allegations. *Loubser v. Thacker*, 440 F.3d

17

439, 442-43 (7th Cir. 2006) (holding that conspiracy "is not something that Rule 9(b) . . . requires

be proved with particularity, and so a plain and short statement will do . . . [but] a bare claim of

'conspiracy' [is] wholly uninformative to the defendant."); *see also Goren*, 156 F.3d at 731 ("[T]he

RICO conspiracy provision must be interpreted in light of the traditional understanding of the term

'to conspire.'") (citing *Salinas v. United States*, 552 U.S. 52, 63-64 (1997)). Instead, to sufficiently

state a claim for RICO conspiracy, Plaintiff need only plead "that each defendant agreed to maintain

an interest in or control of an enterprise or to participate in the affairs of an enterprise through a

pattern of racketeering activity and (2) that each defendant further agreed that someone would

commit at least two predicate acts to accomplish these goals." *Goren*, 156 F.3d at 732 (citations

omitted).

In this case, Plaintiff alleges that Martinez and Hernandez each knowingly hired unauthorized

workers and falsified I-9 forms to do so. *See* Amend. Compl. at ¶¶ 30-59. Only one time does

Plaintiff's Amended Complaint allege that Defendants agreed that Martinez and Hernandez would

carry out the scheme:

> Therefore, Mr. O'Shea alleges Defendants have conspired to violate
> 18 U.S.C. § 1962(c), which is a violation of § 1962(d), by their
> agreement for Martinez and Hernandez to carry out the Scheme in the
> manner described above and below, which they have done hundreds
> (or thousands) of times over the last four years at IPC.

Amend. Compl. at ¶ 61. This is the only time Plaintiff alleges that Martinez and Harding were aware

of each other's activities at all. Although the rest of the Amended Complaint details how "Martinez

and Hernandez" hired the unauthorized workers, the Amended Complaint does not specify whether

they acted together or separately.

While tersely stated, Plaintiff allegations are sufficient to plead a conspiracy among all three

Defendants. The alleged agreement among Harding, Martinez, and Hernandez was that Martinez and Hernandez would "carry out the Scheme" detailed in the rest of the Amended Complaint. Amend. Compl. at ¶ 61. This demonstrates both that the Defendants "agreed to participate in the affairs of an enterprise through a pattern of racketeering activity" and that they "agreed that someone would commit at least two predicate acts" under RICO. *Goren*, 156 F.3d at 732 (citations omitted).

As to Plaintiff's RICO conspiracy claim, the Amended Complaint complies with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," such that the Defendants were given "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, Plaintiff's RICO conspiracy claim must still be dismissed for lack of standing, as discussed above.

2.      Intracorporate conspiracy

Defendants also argue that Plaintiff's conspiracy claim fails under the intracorporate conspiracy doctrine. Defendants suggest that because Defendants are all IPC employees, they could not conspire together under § 1962(d). Defendants acknowledge that the Seventh Circuit has rejected the intracorporate conspiracy doctrine as a bar to liability under § 1962(d) where a corporation is alleged to have conspired with its employees. *See Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271, 1281 (7th Cir. 1989); *see also Webster v. Omnitrition Int'l*, 79 F.3d 776, 787 (9th Cir. 1996) ("We agree with the reasoning of [the Seventh Circuit], and hold that § 1962(d) applies to intracorporate conspiracies."). Where two employees of the same company conspire with one another, however, Defendants argue that the intracorporate conspiracy doctrine remains as a bar to RICO conspiracy liability.

Although *Ashland* prohibited application of the intracorporate conspiracy doctrine where a

corporation conspired with its employees, the Seventh Circuit's reasoning in that case remains applicable here, where Plaintiff alleges that IPC employees conspired with one another. *See Ashland*, 875 F.2d at 1281. To reject conspiracy liability simply because the defendants in a given case are employed by the same entity would be to effectively sanction any RICO conspiracy conducted behind the shield of corporate formalities. *See Webster*, 79 F.3d at 787. Indeed, the very purpose of RICO is to prevent legitimate businesses from being infiltrated by racketeers. *Ashland*, 875 F.2d at 1281. For this reason, *Ashland*'s holding that the bar on intracorporate conspiracies does not apply in RICO conspiracy cases applies in this case.[2]

Accordingly, the intracorporate conspiracy doctrine is not a bar to Plaintiff's RICO conspiracy claims. However, Plaintiff's lack of standing, as discussed above, requires that Plaintiff's RICO conspiracy claim be dismissed.

## CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Judge DeGuilio **GRANT** Defendants' Motion to Dismiss First Amended Complaint [DE 24]. The Court **RECOMMENDS** that Judge DeGuilio dismiss all Plaintiff's claims.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th

---

[2] Defendants cite *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225 (7th Cir. 1997) and argue that it stands for the proposition that "a parent company cannot engage in a RICO conspiracy with its subsidiaries, agents or employees" – the opposite of *Ashland*'s holding. However, *Fitzgerald* did not address RICO conspiracy claims or the intracorporate conspiracy doctrine, so it had no effect on *Ashland*'s holding.

Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989).

SO ORDERED this 10th day of February, 2017.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:    All counsel of record