UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| ANDREW O'SHEA, individually and on behalf of all those similarly situated,<br>　　　　Plaintiff,<br><br>　　v.<br><br>JAMES HARDING, MARISOL MARTINEZ, and RUBEN HERNANDEZ,<br>　　　　Defendants. | CAUSE NO.: 4:16-CV-15-JVB-JEM |

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss Second Amended Complaint [DE 49], filed by Defendants James Harding, Marisol Martinez, and Ruben Hernandez on May 31, 2017. Plaintiff Andrew O'Shea filed a response on June 23, 2017, and Defendants filed a reply on July 14, 2017.

Plaintiff filed his Second Amended Class Action Complaint on April 26, 2017, alleging civil class action Racketeer Influenced and Corrupt Organizations Act (RICO) claims against Defendants, who are employees of the Indiana Packers Corporation (IPC), which is a meat processing plant in Delphi, Indiana. Plaintiff alleges that Defendants made false attestations on I-9 forms and accepted false documents in hiring employees unauthorized to work in the United States, thereby lowering the wages paid to IPC's hourly production wage employees who are authorized to work in the United States.

**LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is to test the sufficiency of the pleading, not to decide the merits of the case. *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal Rule of Civil Procedure Rule 8(a)(2) provides

that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 661, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). As the Supreme Court has stated, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). A complaint is facially plausible if a court can reasonably infer from factual content in the pleading that the defendant is liable for the alleged wrongdoing. *Id*. (citing *Twombly*, 550 U.S. at 570).

## PLAINTIFF'S ALLEGATIONS

Plaintiff makes the following allegations in the Second Amended Class Action Complaint. Martinez and Hernandez work in IPC's human Resources office and report directly to Harding. (2d Am. Compl. ¶¶ 30-31). Martinez and Hernandez accepted, received, obtained, and used fake or fraudulent immigration documents and lied on I-9 forms in order to hire unauthorized workers "hundreds (or thousands) of times over the last four years at IPC." *Id.* at 61. Harding knew of and approved of Martinez's and Hernandez's actions. *Id.* at ¶ 40.

IPC's labor market is approximately the area within a 50-mile radius from IPC's plant in Delphi, Indiana. *Id.* at ¶ 11. This includes the Indiana counties of Jasper, Pulaski, Fulton, Benton, White, Carroll, Cass, Miami, Warren, Tippecanoe, Clinton, Howard, Tipton, Montgomery, and Boone. *Id.* at ¶ 9.

IPC employs 2,500 to 3,000 workers. *Id.* at ¶ 12. The typical IPC production worker is a member of the "drop-out-plus-one" (DOPO) workforce, that is, a high school dropout with one or more of the following: an arrest record, a recent physical injury, or an unstable work history. *Id.*

at 16. Many employers will not hire such a person, and IPC is the largest employer in the labor market that will hire such a person. *Id.* There are approximately 10,327 DOPO workers in IPC's labor market, and IPC employs approximately 29% of these DOPO workers. *Id.* at 17. Approximately 30% of the jobs available to high school dropouts in the labor market require skills beyond those required by IPC. *Id.* at ¶ 21. Because a typical IPC worker is not suited to these 30% of the jobs, IPC's share of the relevant employment is 41%. *Id.* at ¶ 22. Additionally, the other employers tend to be small and searching for job openings is difficult for the DOPO workers. *Id.* at ¶ 23.

Because so many unauthorized workers were employed by IPC, the members of the putative class received a lower wage than they would have if IPC had not hired unauthorized workers. *Id.* at ¶¶ 28-29. IPC's size and the nature of the labor market for members of the putative class "tied" the class members to their jobs at IPC and gave IPC market power. *Id.* at ¶¶ 20-27.

Plaintiff is a DOPO worker, and he accepted a job at IPC in 2013 for approximately $10.50 per hour. *Id.* at ¶ 18. He worked for approximately 10 months after being hired and worked for a second time in 2014 for several months, achieving a pay rate of approximately $10.85 at the highest. *Id.* The average wage for full-time DOPO employees in the IPC labor market is $13.40. *Id.* at ¶ 29.

## ANALYSIS

Under RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Further, it is unlawful to conspire to violate § 1962(c). 18 U.S.C. § 1962(d). RICO provides a civil remedy for RICO

3

violations: civil RICO suits may be brought by the Attorney General or by "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). "[A] cause of action under § 1962(c) requires a plaintiff to plead '(1) an injury in its business or property (2) by reason of (3) the defendants' violation of section 1962.'" *DeGuelle v. Camilli*, 664 F.3d 192, 198 (7th Cir. 2011) (quoting *RWB Servs., LLC v. Hartford Computer Grp., Inc.*, 539 F.3d 681, 685 (7th Cir. 2008)).

## A. Causation

Defendants first argue that Plaintiff does not have standing to bring his claims. The "by reason of" element of RICO standing requires the RICO violation to be both a but-for and a proximate cause of the RICO plaintiff's injury. *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992). Defendants assert that the alleged RICO violations are not a proximate cause of Plaintiff's injury.

"When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). "[S]ome direct relation between the injury asserted and the injurious conduct alleged" is required. *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010). "A link that is too remote, purely contingent, or indirect is insufficient." *Id.* "The proximate-cause inquiry . . . requires careful consideration of the 'relation between the injury asserted and the injurious conduct alleged,'" *Anza*, 547 U.S. at 461 (quoting *Holmes*, 503 U.S. at 268), and "the focus is on the directness of the relationship between the [defendant's alleged] conduct and the harm." *Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723, 729 (7th Cir. 2014) (alterations in original) (quoting *Hemi Grp., LLC*, 559 U.S. at 12).

The Court has already found in this litigation that the case of *Walters v. McMahen*, 684 F.3d 435 (7th Cir. 2005), is instructive on the issue of proximate cause. (R. & R. 10, ECF No. 35, *adopted by* (Order, ECF No. 40)). In that case, the plaintiffs alleged that their employer falsified I-9 forms in hiring unauthorized workers, and the court held that there was no direct link between the alleged injury of depressed wages and any false attestation. *Walters*, 684 F.3d at 444.

The *Walters* court noted:

> The Supreme Court has identified three reasons supporting [the] requirement of a direct link between an alleged predicate act and a plaintiff's injury. These reasons are: (1) the factual difficulty of measuring indirect damages and distinguishing among distinct independent causal factors; (2) the complexity of apportioning damages among plaintiffs to remove the risk of multiple recoveries; and (3) the vindication of the law through compensation of directly-injured victims.

*Id.*

In the instant matter, the Court held, on the previous complaint's allegations, that "[t]he causal connection between Plaintiff's depressed wages and Defendants' alleged violations is simply too tenuous." (R. & R. 10, ECF No. 35, *adopted by* (Order, ECF No. 40)). In the Second Amended Complaint, which is the operative complaint, Plaintiff added the following language:

> Therefore, the inability of IPC workers to leave without incurring significant costs, coupled with IPC's 41% share of relevant employment, and the barrier to entry of new employers into the market created by IPC's below-market priced labor combines to give IPC the market power to set the wages of IPC workers. This means its hiring of illegal workers directly affects employee wages. It gives IPC the ability to keep workers while paying them less than the value of what they produce for IPC.

(2d Am. Compl. ¶ 27, ECF No. 44).

The Court finds that this language does not cure the deficiency of the prior pleading. The predicate act on which Plaintiff attempts to build his RICO claim is 18 U.S.C. § 1546. Specifically, Plaintiff alleges that Defendants made false attestations on I-9 forms in violation of this code provision. Plaintiff does not argue that the hiring of unauthorized workers is the predicate act.

5

Indeed, there is a code provision regarding the hiring of unauthorized workers that could give rise to a civil RICO claim, but Plaintiff has not stated such a claim. *See* 8 U.S.C. § 1324(a)(3)(A); *see also Simpson v. Sanderson Farms, Inc.*, 7:12-cv-28, 2012 WL 4049435, at *3-4 (M.D. Ga. Sept. 13, 2012) (discussing requirements of a RICO claim based on violations of § 1324(a)(3)(4)). In light of a separate provision governing the hiring of unauthorized workers, it is improper to elide the false attestations with the hiring.

The *Walters* court directly addressed this issue:

> Although false attestations made by the hiring clerks are one step in a chain of events that ultimately may have resulted in the employment of unauthorized aliens by [the employer], the plaintiffs have not demonstrated that the false attestations themselves have had a direct negative impact on the plaintiffs' wages, or on any other aspect of their compensation.

684 F.3d at 444. Admittedly, Plaintiff here has provided more extensive market data than that which was before the *Walters* court. Still, for there to be proximate cause, the false attestations must directly cause the alleged depressed wages. Instead, they are merely one step in the chain of events that allegedly led to lower wages for IPC workers. The connection here is still too tenuous.

In *Nichols v. Mahoney*, 608 F. Supp. 2d 526 (S.D.N.Y. 2009), the court rejected the argument that there was a direct relationship between harboring undocumented immigrant workers and depressed wages. That court noted that the plaintiffs had not even alleged such a direct connection, choosing instead to assert that plaintiffs were paid below-market wages because the defendants hired undocumented workers who were willing to work for less than the prevailing wage. *Id.* at 541. The same circumstance exists here: Plaintiff alleges that IPC's "*hiring* of illegal workers directly affects employee wages." (2d Am. Compl. ¶ 27, ECF No. 44 (emphasis added)). The *Nichols* court stated that "the fact that harboring may have allowed the alleged injury to persist for a longer period does not mean that harboring caused the injury." 608 F. Supp. 2d at 542. The Court makes an analogous finding here: false attestations may have allowed IPC to avoid

6

governmental detection of its unauthorized workers for a longer period than paying the workers off the books would have, but that does not mean that the attestations caused the injury.

As the Court noted previously, many factors independent of the alleged RICO violations likely contributed to Plaintiff's lower wages. (R. & R. 11, ECF No. 35, *adopted by* (Order, ECF No. 40)). Plaintiff alleges that many jobs available to DOPO workers with employers other than IPC require additional skills, such as "communication, customer-service interaction, interpersonal, listening, mechanical, time management, math, and selling skills," (2d Am. Compl. ¶ 21, ECF No. 44) and that a DOPO worker's search for alternative employment requires significant time and resources, *id.* at ¶ 24. These factors, and potentially others, could contribute to the wages that Plaintiff received from IPC, which are lower than the estimated average wage of full-time DOPO workers alleged by Plaintiff. If Plaintiff's claim were allowed, the Court would have to determine what role these other factors played in depressing Plaintiff's wages in order to find the injury attributable to the false attestations. The speculative nature of calculating exactly what decrease in Plaintiff's wages were cause by false attestations further illustrates the point that there is no proximate cause. *Anza* 547 U.S. at 459.

Additionally, false attestations are "a direct affront to the Government," so it is not necessary for Plaintiff to have a cause of action because the Government, as a direct victim, can vindicate its own claim. *Nichols*, 608 F. Supp. 2d at 542; *accord Anza*, 547 U.S. at 460 ("If the allegations are true, the State can be expected to pursue appropriate remedies. The adjudication of the State's claims, moreover, would be relatively straightforward.").

In sum, the alleged violation is false attestations on I-9 forms, which is an act against the government. The alleged injury is depressed wages paid to Plaintiff. These false attestations *may* streamline the process of hiring unauthorized workers, which *may* in turn have an effect on the

wages IPC pays to all of its employees. However, the required direct connection is lacking between the false attestations and Plaintiff's alleged injury. Without proximate cause, Plaintiff lacks standing, and his complaint is dismissed.

## B. Injury

The parties also dispute whether Plaintiff has stated an injury to his business or property as required for RICO standing. The Court, as it did previously, assumes without deciding that Plaintiff's alleged damages are compensable under RICO. As before, the Court finds that Plaintiff has failed to plead facts sufficient to support his alleged damages.

The Court previously found that Plaintiff had not stated an injury because he had not alleged the prevailing market wage of DOPO workers; he had instead alleged only the prevailing market wage of workers with less than a high school education. (R. & R. 7-8, ECF No. 35, *adopted by* (Order, ECF No. 40)).

In the Second Amended Complaint, Plaintiff alleges a prevailing market wage of DOPO workers. Plaintiff asserts that this means he has stated an injury sufficient to bestow RICO standing. However, the Court had previously found that the proper wage allegation was missing, not that the wage was the only matter that kept Plaintiff from alleging an injury. Plaintiff also alleges:

> [A]pproximately 30% of the jobs in [IPC's] labor market that are available to high school drop-outs require skills above what IPC requires for production workers, which are merely physical strength and stamina, and some coordination. These additional skills (required by other low-skill employers) include communication, customer-service interaction, interpersonal, listening, mechanical, time management, math, and selling skills, as well as exhibiting patience.

(2d Am. Compl. ¶ 21). He further alleges "a typical IPC production/line worker is not well-matched or well-suited for 30% of such jobs that other high-school dropouts would be eligible for, thereby further shrinking the available pool of alternative jobs, and increasing IPC's share of

8

relevant employment to approximately 41%." *Id.* at ¶ 22. However, the alleged benchmark wage does not separate out jobs requiring the additional skills that Plaintiff alleges are outside of the typical IPC production or line worker's skillset.

Plaintiff's proposed benchmarks for determining his damages—the average wages of DOPO workers who may or may not have the skills required for the 30% of jobs that Plaintiff asserts are beyond the typical IPC workers' skillset—is a fundamentally inadequate measure of Plaintiff's damages. Plaintiff's own Complaint alleges that individuals without these skills have fewer jobs available to them in the relevant labor market. (2d Am. Compl. ¶ 21, 22, ECF No. 44). Logically, these workers also accept lower pay than workers with those skills. Plaintiff cannot allege his injury to "business or property" by comparing his wages to the wages of someone in a more skilled position than he is in.

Because Plaintiff has failed to allege an appropriate benchmark wage, Plaintiff has not clearly and definitely pleaded that he suffered injury to his business or property. *See Evans*, 434 F.3d at 932 ("[A] cause of action does not accrue under RICO until the amount of damages becomes clear and definite.").

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Defendants' Motion to Dismiss Second Amended Complaint and **DISMISSES** Plaintiff's Second Amended Complaint for lack of standing.

SO ORDERED on February 11, 2020.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT
